IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Michael Holmes, et al., : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 2:08-cv-602 |
| v. : | |
| : | |
| Kenneth Wilson, et al., : | JUDGE ALGENON L. MARBLEY |
| : | Magistrate Judge King |
| Defendants. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants Kenneth and Candace Wilson's ("Defendant Buyers") Motion to Dismiss Plaintiffs Michael and Renne Holmes' ("Plaintiff Sellers") Amended Complaint. (Dkt. 18). Plaintiff Sellers sued Defendant Buyers alleging breach of contract (Count I); bad faith (Count II); and promissory estoppel (Count III); in regards to a purchase contract for the sale of Plaintiff Sellers' home to Defendant Buyers. Defendant Buyers move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED** as to Count II, and **DENIED** as to Counts I and III.

**II. BACKGROUND**

On July 31, 2007, Plaintiff Sellers and Defendant Buyers engaged in negotiations for the sale/purchase of 8107 Summerhouse Drive, Dublin, Ohio 43016 ("Summerhouse"). Caldwell Banker King Thompson ("King Thompson") served as the exclusive Broker for the sale/purchase of Summerhouse, although Plaintiff Sellers and Defendant Buyers were each

1

represented by a different member of King Thompson. On July 31, 2007, Defendant Buyers presented Plaintiff Sellers with a Real Estate Purchase Contract ("Purchase Contract") that offered a purchase price of $415,000 and required the Defendant Buyers to make an earnest money deposit of $1,000 within 48 hours of the Plaintiff Sellers' acceptance.

Throughout the course of the day there were four additional counteroffers. In the first counteroffer, made by Plaintiff Sellers, the purchase price was increased to $440,000 and the earnest money deposit was increased to $4,000. In the second counteroffer, Defendant Buyers offered a purchase price of $430,000 and provided for a closing date to occur on or before August 16, 2007. The third counteroffer, made by Plaintiff Sellers, provided a purchase price of $435,000, and provided for a closing date to occur on August 15, 2007, with possession on August 18, 2007, because Plaintiff Sellers would need time to pack and ship their belongings. The fourth counteroffer, made by Defendant Buyers, listed the purchase price as $435,000, the closing date as August 15, 2007, with possession on August 18, 2007, and requested Plaintiff Sellers to leave the washer, dryer, patio furniture, and exercise equipment on the Summerhouse property. These offers were all made via the King Thompson representatives, and were communicated via fax and telephone. All of the offers are presented on King Thompson's form. The fourth counteroffer (made by Defendant Buyers) was signed by Defendant Buyers at 7:27 p.m. on July 31, 2007, and notes that the offer is open for acceptance until 7:27 p.m. on July 31, 2007. It was then signed by Plaintiff Sellers at 6:30 p.m. on August 2, 2007.

On August 2, 2007, Defendant Buyers submitted to their Agent a draft for $4,000 made out to King Thompson for the Summerhouse property. Plaintiff Sellers claim this money was in satisfaction of the earnest money requirement, whereas Defendant Buyerss claim that they were mislead into believing they had to remit $4,000 by the King Thompson agents.

On August 3, 2007, an inspection of the Summerhouse property was performed. After the completion of the inspection, Defendant Buyers submitted to Plaintiff Sellers three requests, each of which asked Plaintiff Sellers to remedy unsatisfactory conditions with the Summerhouse property. Plaintiff Sellers agreed to remedy all of these conditions.

On August 10, 2007, Defendant Buyers, through their King Thompson Agent, submitted a Notice of Termination of Contract, indicating that the wanted to terminate the Purchase Contract because when Mrs. Wilson came to town and reviewed the Summerhouse property, the Defendant Buyers decided the property would not work for their family. Additionally, on August 10, 2007, the Defendant Buyers filed a Notice of Intent to Release Deposit & Mutual Release, and requested $2,000 of the earnest money to be returned to them. Plaintiff Sellers did not execute the Mutual Release and did not consent to the return of the earnest money.

Finally, on August 15, 2007, King Thompson sent a letter to Plaintiff Sellers informing them that the earnest money draft that had been deposited into its trust account was returned due to non-sufficient funds. King Thompson also indicated that they had become aware that the Defendant Buyers did not intend to perform on the Purchase Contract, and that the Defendant Buyers may have purchased an interest in another property.

On January 14, 2009, Plaintiff Sellers' filed their Amendment Complaint. Defendant Buyers moved to dismiss the Amended Complaint on March 5, 2009.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual

3

allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)*; Murphy v. Sofamor Danek Gp.,Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). However, the Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 127 S. Ct. 1955 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S at 556).

## IV. LAW AND ANALYSIS

### A. Breach of Contract

In Count I of the Plaintiff Sellers' Amended Complaint, Plaintiff Sellers allege that Defendant Buyers committed a breach of contract by failing to comply with the Purchase

Contract and by failing to close on purchase of the Summerhouse property. Under Ohio law, a plaintiff must satisfy four elements to make out a breach of contract claim: 1) the existence of a binding contract; 2) the non-breaching party performed its contractual obligations; 3) a breach in contractual obligations by the other party; and 4) the non-breaching party suffered damages as a result of the breach. *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582 (Ohio Ct. App. 2004); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 107 (Ohio Ct. App. 1995). Defendant Buyers allege that Plaintiff Sellers' breach of contract claim should be dismissed because a binding contract never existed. Construing the facts in the light most favorable to the nonmoving party, in this case the Plaintiff Sellers, Plaintiff Sellers' Complaint alleges factual allegations sufficient to support a claim under which relief can be granted.

Even if this Court were to find, however, that an express contract does not exist because of the date of acceptance by Plaintiff Sellers, Ohio law recognizes implied-in-fact contracts. "[I]n implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding." *Gruger v. Diversified Air System, Inc.*, No. 07-MA-52, 2008 WL 2633470, at *6 (Ohio Ct. App. June 30, 2008) (citing to *Point E. Condo. Owners' Assn. v. Cedar House Assn.*, 104 Ohio App.3d 704, 712 (Ohio Ct. App. 1995). In order to establish a contract implied-in-fact the plaintiff must show that the circumstances surrounding the transaction make it reasonably certain that an agreement was intended. *Id.* (citing to *Lucas v. Costantini*, 13 Ohio App.3d 367, 368 (Ohio Ct. App. 1983). Given the facts alleged in the Complaint, and supported with exhibits (including a check for $4,000 and the inspection and subsequent remedy of unsatisfactory conditions), Plaintiff Sellers have pled

sufficient facts to make out a plausible claim for relief for breach of contract under implied-in-fact contract theory. Plaintiff Sellers' Complaint addresses all four elements required under Ohio law, including the existence of a contract as discussed above, their performance of the contract, a breach by Defendant Buyers, and damages that have occurred as a result of that breach. Accordingly, this Court **DENIES** Defendant Buyers' Motion to Dismiss as to Count I: Breach of Contract.

### B. Bad Faith

In Count II of the Amended Complaint, Plaintiff Sellers allege a bad faith claim against Defendant Buyers' for their failure to fulfill their obligations under the Purchase Contract. Under Ohio law there is not a "tort cause of action for breach of covenant of good faith that is separate from a breach of contract claim, and, if [such a breach]...is asserted as part of a contract claim, it must be alleged as part of that contract count, and may not stand alone.**"** *Webb v. Chase Manhattan Corp.*, No. 2:05-cv-0548, 2007 WL 709335, at *7 (S.D. Ohio Mar. 5, 2007) (citing to *Lakota Local School Dist. v. Brickner*, 108 Ohio App.3d 637, 646 (Ohio Ct. App. 1996)). Plaintiffs' state that in Ohio "...bad faith is part of a contract claim, and not necessarily a separate tort claim." Pls.' Opp'n to Defs.'Mot. to Dismiss at 8. Plaintiff Sellers' are correct in this assertion, as allegations of bad faith may be considered in determining whether a breach of contract occurred. As the court stated in *Webb*, however, a bad faith claim may not stand alone. *Webb* at *7. Given that Ohio law does not recognize a stand alone claim, tort or otherwise, for

bad faith under a contract, Count II of Plaintiff Sellers' Complaint must fail.[1]  Therefore, this Court **GRANTS** Defendant Buyers' Motion to Dismiss as to Count II: Bad Faith.

### C. Promissory Estoppel

In Count III of the Amended Complaint, Plaintiff Sellers allege that Defendant Buyers are liable under promissory estoppel.  Under Ohio law, a plaintiff must establish four elements to succeed on a promissory estoppel claim: 1) a clear and unambiguous promise; 2) reliance on the promise; 3) reliance is reasonable and foreseeable; and 4) the relying party was injured by his or her reliance. *Dunn v. Bruzzese*, 172 Ohio App.3d 320, 329 (Ohio Ct. App. 2009).  Defendant Buyers argue that Plaintiff Sellers have not pled sufficient facts for a promissory estoppel cause of action, and that notwithstanding their factual allegation, Plaintiff Sellers have not alleged injury because of Defendant Buyers' failure to purchase Summerhouse.  Construing the facts in favor of the Plaintiff Sellers, their Amended Complaint states a plausible claim for relief under a promissory estoppel cause of action as to all four required elements.  The Amended Complaint alleges: (1)  that Defendant Buyers made a clear and unambiguous promise to purchase Summerhouse on August 15, 2007; (2) that Plaintiff Sellers undertook time and expense to accommodate the Defendant Buyers' requests for a swift closing, including remedying unsatisfactory conditions identified during inspection; (3) that Defendant Buyers' knew Plaintiff Sellers' resided in Florida and would need to pack and ship their belongings; and (4) that because of Plaintiff Sellers' reliance on the promise they suffered injury. *See* Compl. at ¶¶ 36-42. Although Count III, which states in part that "The Sellers suffered substantial injury,

---

[1] This Court does not hold that Plaintiff Sellers' may not allege bad faith as it relates to the Count I breach of contract claim, as allegations of bad faith "may be considered in determining whether a breach of contract occurred."  *Webb* at *7.

damage, and loss as a direct result of their reliance on the Buyers' promise to purchase the Property," could be read as a conclusory factual allegation that does not satisfy the pleading standard under *Twobly,* 550 U.S. 544 (2007), and *Iqbal*, 129 S.Ct. 1937 (2009), the next section of the Amendment Complaint lays out in detail factual allegations on the issue of damages. Compl. at ¶¶ 42, 43-49. For the reasons set forth herein, Defendant Buyers' Motion to Dismiss as to Count III: Promissory Estoppel, is **DENIED.**

## V. CONCLUSION

For the reasons stated above, Defendant Buyers' Motion to Dismiss (Dkt. 18) is **DENIED** as to Count I: Breach of Contract and Count III: Promissory, and is **GRANTED** as to Count II: Bad Faith.

**IT IS SO ORDERED.**

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**DATED: October 13, 2009**