IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Michael Holmes, et al.,** : | |
| : | |
| Plaintiffs, : | |
| : | Case No. 2:08-cv-602 |
| v. : | |
| : | |
| **Kenneth Wilson, et al.,** : | **JUDGE ALGENON L. MARBLEY** |
| : | Magistrate Judge King |
| **Defendant**s. : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiffs Michael and Renne Holmes' Motion for Summary Judgement ("Plaintiff Sellers"). (Dkt. 22). Plaintiff Sellers move for summary judgment on their breach of contract and promissory estoppel claims against Defendants Kenneth and Candace Wilson ("Defendant Buyers"), in regards to a purchase contract for the sale of Plaintiff Sellers' home to Defendant Buyers. For the reasons set forth below, the motion is **GRANTED** as to the Defendant Buyers' liability.

### II. BACKGROUND

On July 31, 2007, Plaintiff Sellers and Defendant Buyers engaged in negotiations for the sale/purchase of 8107 Summerhouse Drive, Dublin, Ohio 43016 ("Summerhouse"). Caldwell Banker King Thompson ("King Thompson") served as the exclusive Broker for the sale/purchase of Summerhouse, although Plaintiff Sellers and Defendant Buyers were each represented by a different member of King Thompson (Mary Henry and Gail Merrell respectively). On July 31, 2007, Defendant Buyers presented Plaintiff Sellers with a Real Estate

Purchase Contract ("Purchase Contract") that offered a purchase price of $415,000 and required the Defendant Buyers to make an earnest money deposit of $1,000 within 48 hours of the Plaintiff Sellers' acceptance.

Throughout the course of the day there were four additional counteroffers. In the first counteroffer, made by Plaintiff Sellers, the purchase price was increased to $440,000 and the earnest money deposit was increased to $4,000. In the second counteroffer, Defendant Buyers offered a purchase price of $430,000 and provided for a closing date to occur on or before August 16, 2007. The third counteroffer, made by Plaintiff Sellers, provided a purchase price of $435,000, and provided for a closing date to occur on August 15, 2007, with possession on August 18, 2007, because Plaintiff Sellers would need time to pack and ship their belongings. The fourth counteroffer, made by Defendant Buyers, listed the purchase price as $435,000, the closing date as August 15, 2007, with possession on August 18, 2007, and requested Plaintiff Sellers to leave the washer, dryer, patio furniture, and exercise equipment on the Summerhouse property. These offers were all made via the King Thompson representatives, and were communicated via fax and telephone. All of the offers are presented on King Thompson's form. The fourth counteroffer (made by Defendant Buyers) was signed by Defendant Buyers at 7:27 p.m. on July 31, 2007, and notes that the offer is open for acceptance until 7:27 p.m. on July 31, 2007. It was then signed by Plaintiff Sellers at 6:30 p.m. on August 2, 2007.

On August 2, 2007, Defendant Buyers submitted to their Agent a draft for $4,000 made out to King Thompson. The "For" line on the check states that it is for " 8107 Summerhouse". (Resp. Opp. Mot. to Dismiss, Ex. 1.) Plaintiff Sellers claim this money was in satisfaction of the earnest money requirement, whereas Defendant Buyers claim that they were mislead into believing they had to remit $4,000 by the King Thompson agents, and under the terms of the

Purchase Contract only need to submit $1,000. Defendant Buyers further concede that the $4,000 draft was to comply with the terms of the Purchase Contract in order to purchase the Summerhouse Property.

The Purchase Contract includes a provision for requests for remedies, and states that the Buyers and Sellers have three days to reach an agreement on any unsatisfactory conditions. If an agreement is not reached, the Purchase Contract is void. The Purchase Contract does not, however, specify a time frame in which any repairs to unsatisfactory conditions must be completed, or address the consequences of a breach of the agreement on unsatisfactory conditions. (Pls.' Compl., Ex. 1 at 3.) Furthermore, the Purchase Contract does not contain a clause allowing for termination on any grounds other than a failure to come to an agreement on requests to remedy.

On August 5, 2007, after completion of the inspection and as required by the Purchase Contract, Defendant Buyers submitted to Plaintiff Sellers a signed and dated document with nine Requests to Remedy Unsatisfactory Conditions ("Requests to Remedy"), each of which asked Plaintiff Sellers to remedy unsatisfactory conditions with the Summerhouse property. (Resp. Opp. Mot. to Dismiss, Ex. 3 at 1.) Plaintiff Sellers agreed to remedy all of these conditions in the Requests to Remedy in a written and signed document on August 8, 2007. (Resp. Opp. Mot. to Dismiss, Ex. 3 at 2.) A subsequent Request to Remedy was submitted by Defendant Buyers (signed by Kenneth Wilson on August 7, 2007, and by Candace Wilson on August 10, 2007), and states that it is agreed to be the Plaintiff Sellers, who also signed the document. (Resp. Opp. Mot. to Dismiss, Ex. 3 at 3.)

On August 10, 2007, Defendant Buyers, through their King Thompson Agent, submitted a Notice of Termination of Contract, indicating that the wanted to terminate the Purchase

Contract because when Mrs. Wilson came to town and reviewed the Summerhouse property, the Defendant Buyers decided the property would not work for their family ("Termination Letter"). The Termination Letter, its in entirety, stated: "1) After wife came to town and reviewed the property, it was decided that the home would not work for the family." (Pls.' Mot. Summ. Judg., Ex. 1 at 5.) Additionally, on August 10, 2007, the Defendant Buyers filed a Notice of Intent to Release Deposit & Mutual Release, and requested $2,000 of the earnest money to be returned to them. Plaintiff Sellers did not execute the Mutual Release and did not consent to the return of the earnest money.

Finally, on August 15, 2007, King Thompson sent a letter to Plaintiff Sellers informing them that the earnest money draft that had been deposited into its trust account was returned due to non-sufficient funds. King Thompson also indicated that they had become aware that the Defendant Buyers did not intend to perform on the Purchase Contract, and that the Defendant Buyers may have purchased an interest in another property.

On January 14, 2009, Plaintiff Sellers' filed their Amendment Complaint. On October 30, 2009, this Court denied the Defendant Buyers Motion to Dismiss at to the Breach of Contract and Promissory Estoppel Claims, but granted the Defendant Buyers' Motion to Dismiss as to the bad faith claim. (Dkt. 26.) On October 13, 2009, the Plaintiff Sellers filed a Motion for Summary Judgment. (Dkt. 22.) This Court held oral argument on April 2, 2010.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

# IV. LAW AND ANALYSIS

## A. Breach of Contract

Plaintiff Sellers allege that they are entitled to summary judgment because there are no genuine issues of material fact as to the fact that Defendant Buyers committed a breach of contract by failing to comply with the Purchase Contract and by failing to close on purchase of the Summerhouse property. Under Ohio law, a plaintiff must satisfy four elements to make out a breach of contract claim: 1) the existence of a binding contract; 2) the non-breaching party performed its contractual obligations; 3) a breach in contractual obligations by the other party; and 4) the non-breaching party suffered damages as a result of the breach. *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582 (Ohio Ct. App. 2004); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 107 (Ohio Ct. App. 1995). Defendant Buyers allege that summary judgment is not proper because a genuine issue of material fact exists as to whether a binding contract existed given that the final counteroffer was signed on August 2, 2007 despite the fact that the offer was only open until July 31, 2007 at 7:27 pm. Construing the facts in the light most favorable to the nonmoving party, in this case the Defendant Buyers, and assuming that there is a genuine issue of material fact as to whether an express contract existed, Ohio law recognizes implied-in-fact contracts.

" In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Waffen v. Summers*, No. OT-08-034, 2009 WL 1741731, *5 (Ohio App. 6 Dist. June 19, 2009) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)). In order to establish a contract implied-in-fact the plaintiff must show that the circumstances surrounding the transaction make it reasonably certain that an agreement was

intended. *Gruger v. Diversified Air System, Inc.*, No. 07-MA-52, 2008 WL 2633470, at *6 (Ohio Ct. App. June 30, 2008) (citing to *Lucas v. Costantini*, 13 Ohio App.3d 367, 368 (Ohio Ct. App. 1983)). In this case, it is undisputed by either party that Defendant Buyers: 1) provided Plaintiff Sellers with a $4,000 draft for "8107 Summerhouse" on August 2, 2007, the same day the Plaintiff Sellers signed the fourth and final counteroffer; 2) had an inspection done on the Summerhouse property; 3) provided Plaintiff Sellers with Requests to Remedy within the time period specified by the Purchase Contract; 4) received a written agreement as to the Requests to Remedy from Plaintiff Sellers on August 6, 2007; and 4) submitted a Termination of Contract letter to Plaintiff Sellers that provided as its only reason for termination that when Mrs. Wilson came to town and reviewed the Summerhouse property, the Defendant Buyers decided the property would not work for their family. Accordingly, there is no genuine issue of material fact as to the fact "that the circumstances surrounding the transaction make it reasonably certain that an agreement was intended" by Defendant Buyers. All four elements required under Ohio law for a breach of an implied-in-fact contract are present: 1) there was an existence of a contract as discussed above; 2) Plaintiff Sellers, as the non-breaching party, performed their obligations by coming to a written agreement on the Requests to Remedy; 3) Defendant Buyers breached the Purchase Contract by submitting the Termination Letter;[1] and 4) Plaintiff Sellers suffered damages, mainly in not being able to sell the Summerhouse Property on August 15, 2007 to Defendant Buyers.

---

[1] As noted above, the Purchase Contract did not provide for any grounds for termination other than a failure to arrive at a written agreement as to the requests for remedies post inspection, therefore the grounds for termination specified in the Termination Letter were not included in the Purchase Contract.

Defendant Buyers contend that even if there was a valid contract under the Purchase Contract, summary judgment is not proper because Plaintiff Sellers did not complete all of the remedies as addressed in the Requests to Remedy, and therefore never satisfied the inspection contingency in the Purchase Contract. It is undisputed, however, that there was not a specified date by which the Plaintiff Sellers were required to complete the remedies, and, perhaps more importantly, that the Defendant Buyers made clear their intent to terminate the Purchase Contract on August 10, 2007, when they submitted the Termination Letter to Plaintiff Sellers. Even though this Court assumes, for the purposes of summary judgment, that the Plaintiff Sellers did not complete the Requests to Remedy as required by contract, it is undisputed that Defendant Buyers submitted a Termination Letter prior to the August 15, 2007 closing date of the Purchase Contract. Under Ohio law, "a material breach of contract will entitle a party to stop performance. A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 142-43 (2008) (citing Williston on Contracts, Chapter § 63:3). Applying *Marion*, the Defendant Buyers committed a material breach by informing Plaintiff Sellers that they intended to terminate the Purchase Contract prior to the closing date, thereby defeating the purpose of the contract. The Plaintiff Sellers were then entitled to stop performance, including completion of the Requests to Remedy. The Defendant Buyers argument that the Plaintiff Sellers' failure to complete the Requests to Remedy does not defeat the breach of contract action.

Accordingly, this Court **GRANTS** Plaintiff Sellers' Motion for Summary Judgment as to Defendant Buyers liability for breach of contract.

### B. Promissory Estoppel

Having found for the Plaintiff Sellers as to Defendant Buyers liability for breach of contract, this Court need not reach the issue of promissory estoppel, which the Plaintiffs frame as an alternative cause of action should this Court have found that a contract did not exist.

### C. Damages

Plaintiff Sellers' Motion for Summary Judgment only addresses the issue of liability, and therefore the amount of damages on the breach of contract remains as a triable issue.

### V. CONCLUSION

For the reasons states above, this Court **GRANTS** Plaintiff Sellers' Motion for Summary Judgment as to Defendant Buyers' liability for breach of contract. The issue of damages remains.

**IT IS SO ORDERED.**

                   s/Algenon L. Marbley
                   **ALGENON L. MARBLEY**
                   **UNITED STATES DISTRICT COURT**

**DATED: April 2, 2010**