IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael Holmes, et al.,

      Plaintiffs,

    v.                                 Case No. 2:08-cv-602

Kenneth Wilson, et al.,

      Defendants.


ORDER

    This matter is before the court on motions filed by the parties. On July 23, 2010, defendants filed a motion in limine and request for an order on the issue of damages (Doc. No. 53); a motion in limine to preclude plaintiff's witnesses from testifying on the issue of the fair market value of the plaintiffs' residence at the time of the breach (Doc. No. 54); a motion in limine seeking to exclude plaintiffs' exhibits (Doc. No. 55); and a brief on the issue of earnest money damages which seeks an order precluding plaintiffs from submitting evidence regarding the amount of earnest money for purposes of the calculation of damages in this case (Doc. No. 56). Plaintiffs have filed a motion to strike defendants' motions in limine (Doc. No. 57), and a memorandum opposing those motions.

    Plaintiffs argue in their motion to strike that defendants should be estopped from disputing the exhibits and plaintiffs' claims for damages because defendants failed to make those arguments at the final pretrial conference. The court's purpose in asking whether there were any further issues the parties wished to present to the court was to offer the parties the opportunity to bring any issues which the court could address at the final

pretrial hearing.  Since at the time of the final pretrial conference, plaintiffs had not yet provided their exhibits to defendants' counsel, and were ordered by the court to do so by July 19, 2010, defendants could hardly have been expected to make objections at the final pretrial conference to the exhibits they had not yet seen.  The fact that counsel for defendants did not specifically object to plaintiffs' exhibits at that time does not preclude defendants from doing so in their motions in limine. Plaintiffs argue that the defendants failed to request leave to file the motions in limine.  However, this court authorized defendants to file objections to plaintiffs' exhibits by July 23, 2010. See July 16, 2010 Doc. Entry.  This is what they have done explicitly in Doc. No. 55, and indirectly in Doc. No. 53, which addresses the issue of whether plaintiffs are entitled to the damages allegedly supported by the exhibits.  This court did not establish any other deadlines for the filing of motions in limine in general which would preclude defendants from filing them when they did.  Therefore, plaintiffs' motion to strike Doc. Nos. 53-55 is denied.

Defendants have submitted a brief (Doc. NO. 56) on the issue of earnest money damages, and they request an order that plaintiffs are not entitled to include the earnest money in their claims for damages.  Plaintiffs have responded that they do not intend to offer evidence that they are entitled to the earnest money deposit as a separate item, conceding that the purchase contract contained no liquidated damages provision.  See Doc. No. 57, p. 2, n. 2. Therefore, defendants' request for an order to that effect is moot.

Defendants have moved for an order precluding certain witnesses, including plaintiffs and real estate agents, from

offering testimony concerning the fair market value of their home.

Under Ohio law, the owner of the property is competent to offer an opinion concerning the value of the property. Spalla v. Fransen, No. 2009-G-2910 (11th Dist. unreported), 2010 WL 2892256 at *6 (Ohio App. July 23, 2010); Gaskins v. Young, No. 20148 (2nd Dist. unreported), 2004 WL 1178278 at *8 (Ohio App. May 28, 2004)(a property owner is competent to testify as to the value of his property, and that testimony alone is sufficient to establish the value of the owner's property). Similarly, real estate agents would be qualified to offer testimony concerning the nature of the local real estate market at the time of the breach. It is not possible for the court to determine prior to the witnesses' actual testimony whether any part of that testimony would be barred by the hearsay rule. A blanket ruling in limine would not be appropriate at this time, and the motion (Doc. No. 54) is denied without prejudice to defendants' right to make objections to specific testimony during the trial.

Defendants have filed a motion in limine (Doc. No. 53) seeking a pretrial order ruling on the issue of the damages to which plaintiffs may be entitled. The motion is granted to the extent that the court enters the following order. As to whether specific damages may be recovered, the motion is granted in part and denied in part.

Defendants first argue that plaintiffs are not entitled to the difference between the contract price and the actual purchase price under Ohio law. When a purchaser defaults upon a contract for the sale of real estate, the seller may recover the difference between the contract price and the market value of the property at the time of the breach. McCarty v. Lingham, 111 Ohio St. 551, syll. para.

3, 146 N.E. 64 (1924)  Roesch v. Bray, 46 Ohio App.3d 49, 50, 545 N.E.2d 1301 (1988).  Fair market value is the price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market. City of Englewood v. Wagoner, 41 Ohio App.3d 324, 326, 535 N.E.2d 736 (1987).

Generally, a party seeking to recover damages must not only present evidence of the resale price, but must also present sufficient evidence that the resale price was the true indicator of the fair market value at the time of the breach.  Mildred Hine Trust v. Buster, No. 07AP-277 (10th Dist. unreported), 2007 WL 4532672 at *3  (Ohio App. Dec. 27, 2007).

In considering whether to accept a subsequent resale as the fair market value at the time of the breach, the following factors must be considered by the trier of fact: (1) the length of time between the breach and resale; (2) the terms of the original contract and the later sale of the property; and (3) any evidence as to the stability of the real estate market during the months between the breach and resale.  Snider-Cannata Interests, LLC v. Ruper, No. 93401 (8th Dist. unreported), 2010 WL 1741077 at * 8 (Ohio App. April 29, 2010); Buster, 2007 WL 4532672 at *3.

In some circumstances, the subsequent sale price of the real property is sufficient evidence of its fair market value. Roesch, 46 Ohio App.3d at 50.  When the sale of real estate after a breach of contract is made within a reasonable time and at the highest price obtainable after the breach, it is  sufficient evidence of the market value on the date of the breach. Roesch, 46 Ohio App.3d at 50-51 (holding that resale price $1,500 lower than the contract price, where property was resold one year after the breach while the real estate market was slow due to high interest rates was

4

sufficient evidence of fair market value); Buster, 2007 WL 4532672 at *4 (holding that where resale occurred as a result of competitive bidding within one month of breach, resale price was sufficient evidence of fair market value); Coulter v. Schwab, No. C-880400 (1st Dist. unreported), 1989 WL 129464 at *2 (Ohio App. Nov. 1, 1989)(resale price was fair market value when property was sold within a month of the breach).  But see Hussey v. Daum, No. CA 17148 (2nd Dist. unreported), 1998 WL 896284 at *1 (Ohio App. Dec. 28, 1998)(fair market value based on difference between contract price and rejected offer made to seller between breach and ultimate sale of property, not resale price); Combs v. Simkow, No. CA82-12-0116 (1st Dist. unreported), 1983 WL 6596 at *5 (Ohio App. Nov. 21, 1983)(holding that price for resale of property which occurred eight to ten months after breach was not alone sufficient evidence of fair market value at time of breach).

Thus, it may or may not be the case here that plaintiffs will be able to prove that they are entitled to the difference between the contract price and the resale price.  Since the resale price may constitute at least some competent evidence of fair market value, plaintiffs will not be precluded from introducing the resale contract as evidence.

Defendants next argue that plaintiffs may not recover damages for real estate brokerage fees, utility costs, real estate taxes, mortgage payments, inspection contingency expenses, lost wages, travel expenses, moving and storage expenses.

Generally, damages on a breach-of-contract action are limited to losses that are reasonably to be expected as a probable result of the breach.  Roesch, 46 Ohio App.3d at 51; Peterman v. Dimoski, No. C-020116 (1st Dist. unreported), 2002 WL 31894859 at *2-3 (Ohio

App. Dec. 31, 2002)(seller may recover special damages to the
extent that the parties could have reasonably anticipated them).
The primary purpose of the damage award is to restore the sellers
to their pre-sale position, in other words, to compensate the
sellers for the loss of the bargain on the sale.  Peterman, 2002 WL
31894859 at *4.

   The seller is entitled to recover the difference between the
commission rate owed to the real estate broker for the first sale
and a reasonable higher rate of commission paid to a new broker
retained after the breach.  Saylor v. Eno, No. CA2006-07-165 (12th
Dist. unreported), 2007 WL 210379 at *1 (Ohio App. Jan. 29,
2007)(buyer liable for difference between 1-1/2% sales commission
applicable to first sale and 4% sales commission paid at second
sale);  Peterman 2002 WL 31894859 at *2-3 (Ohio App. Dec. 31,
2002)(expense of paying real estate broker's commission for the
subsequent sale could reasonably have been anticipated by both
parties as a result of the breach; sellers had obligation to
mitigate damages by consummating new sale as soon as possible, and
employment of a broker would be the normal way to accomplish this;
sellers had no duty to retain replacement broker at same 4%
commission rate as original broker, and there was no evidence that
6% rate charged by new broker was extraordinary or exploitative);
Callahan v. Richardson, No. C-780119 (1st Dist. unreported), 1979
WL 208683 at *2 (Ohio App. April 4, 1979)(while buyer would not be
liable for any commissions or expenses connected with the first
sale, expenses of negotiating the new sale could reasonably have
been anticipated by both parties as a result of the breach and are
recoverable).  While the seller may recover the broker's commission
paid for the second sale, he may do so only if he paid the

6

commission on the defaulted sale.  <u>Knight v. Hughes</u>, No. 86AP-1106
(10th Dist. unreported), 1987 WL 17379 at *4 (Ohio App. Sept. 17,
1987).

Here, plaintiffs' Exhibits 16 and 17 indicate that they
entered into a listing contract with Coldwell Banker King Thompson
on January 9, 2007, which established a commission rate of 5%.  On
August 20, 2007, plaintiffs entered into a listing agreement with
HER Real Living, with a commission rate of 5%.  The exhibit
includes another copy of this agreement which specifies a
commission rate of 7%; however, this agreement is not signed by the
plaintiffs.  If plaintiffs paid no commission for the failed sale
in August, and if they paid no greater commission rate on the
resale of the property then the rate applicable to the original
sale, then they are not entitled to damages for real estate
commissions.  Plaintiffs are only entitled to such damages if they
paid more than one commission, in which case they can recover the
commission paid at the resale, or, if the resale involved a higher
commission rate, the difference between the original rate of 5% and
the higher rate on resale.

The seller is usually not entitled to recover for maintenance,
utility and resale expenses on the property during the period
between the breach and the resale of the property.  <u>Roesch</u>, 46 Ohio
App.3d at 51; <u>see</u> <u>also</u> <u>Ruper</u>, 2010 WL 1741077 at *9 (seller is not
entitled to damages to compensate for additional property taxes,
interest, utilities, and home maintenance expenses following a
buyer's breach of real estate contract); <u>Saylor</u>, 2007 WL 210379 at
*2 (seller not entitled to recover for additional mortgage
interest, property taxes and insurance paid before home was sold;
such expenses are incidental to ownership, and while breaching

7

party might have been able to foresee that certain expenses would be incurred in maintaining the property until future resale, the duration and extent of those expenses could only be speculated upon); Peterman, 2002 WL 31894859 at *3 (cost of utilities, real estate taxes, and homeowners' association dues for the period until the home was sold were expenses generally incidental to the sellers' continued ownership and management of the property, and were not recoverable as damages).

In some cases, an award of such expenses has been upheld as being foreseeable to the defaulting party.  Where the sellers, in reliance on the contract, moved into an apartment prior to the breach, the additional insurance and utility expenses were a natural result of the house being vacated, and the seller could recover these expenses as damages. Callahan, 1979 WL 208683 at *3. An award of special damages in the form of storage fees, moving expenses, and loan application expenses was upheld where the seller knew that the buyers intended to move into the property and had to obtain a mortgage loan, and where the buyers sold their house, moved their furniture into storage, and paid a loan commitment fee in reliance on the contract, which was breached when the seller was unable to convey clear title.  Kinnison v. Harnish, No. CA 6564 (2nd Dist. unreported), 1980 WL 352551 (Ohio App. May 1, 1980).

However, where the sellers decided to move into their new home after the breach and before their old home was sold, the economic risk of that decision remained with the sellers, and the purchaser was not liable for utility bills, real estate taxes and other costs of upkeep.  Peterman, 2002 WL 31894859 at *4; see also Hiatt v. Giles, No. 1662 (2nd Dist. unreported), 2005 WL 3346172 at *7-8 (Ohio App. Dec. 9, 2005)(where sellers had moved from the residence

and placed their possessions in storage before the first contract
was entered into, the buyers' breach of the agreement did not cause
the sellers to incur their rental and storage charges; also noting
that the more recent view was that seller could not recover damages
for additional property taxes, interest, utilities, and home
maintenance expenses following a buyer's breach of a real estate
contract; such future expenses are incidental to resulting
ownership and not caused by the breach of contract; the
inconvenience and expense of managing or disposing of one's own
property after a prepared sale is breached or otherwise terminated
is not a proper element of special damages against the defaulting
purchaser).

Plaintiffs seek to recover certain expenses incurred between
the breach and the resale of the home, including mortgage interest,
real estate tax payments, utility bills, lawn maintenance,
winterizing the sprinkler system, payments on the gas line
protection plan, a gas line repair in January of 2008, and a
whirlpool tub repair in January of 2008. See Plaintiffs' Exs. 12
and 14. These items are the sort of expenses generally incidental
to the sellers' continued ownership and management of the property,
and are not recoverable as damages. Peterman, 2002 WL 31894859 at
*3.

Plaintiffs also seek to recover for expenses incurred for a
radon test, a window repair, and a toilet repair prior to closing
date. Such expenses are the sort which would have been incurred as
an incident of the ownership of the property and the sale of the
property to any buyer. See Sneed v. King, No. 66179 (8th Dist.
unreported), 1994 WL 326008 at *2 (Ohio App. July 7,
1994)(rejecting sellers' argument that they were entitled to

recovery of reimbursement for costs for necessary improvement to the property and expenses incurred during the proceedings).

Plaintiffs also claim damages for travel expenses, lost wages, and moving and storage fees. See Plaintiffs' Exs. 11, 19. Plaintiffs are not entitled to recover travel expenses or lost wages. See Sneed, 1994 WL 326008 at *2 (rejecting sellers' argument that they were entitled to recover lost wages and expenses incurred during the proceedings). The travel was necessitated by the fact that plaintiffs had moved to Florida before entering into the agreement with defendants.

The travel documents indicate that plaintiffs traveled to Columbus, Ohio, from their home in Florida on August 10, 2007, which was the same day defendants gave notice of their intent not to proceed with the purchase of the home. Plaintiffs returned to Florida on August 16, 2007, after supervising the packing and moving of the items in the house, which occurred on August 15, 2007. Plaintiffs were aware by August 15th that the contract had been breached. They could have decided to cancel the move and to continue to store their belongings in the house. They chose instead to move their belongings to a storage facility. The defendants' breach of the agreement did not cause plaintiffs to incur their rental and storage charges, and the inconvenience and expense of managing or disposing of their belongings after the breach is not a proper element of special damages. See Hiatt, 2005 WL 3346172 at *7-8.

Defendants have also filed a motion in limine requesting that the court exclude plaintiffs' Exhibits 1 through 19 on the grounds of lack of relevancy and authentication. The court cannot rule on the issue of authentication prior to trial, and will deny that

10

branch of the motion without prejudice.  Defendants may object at trial if plaintiffs fail to adequately authenticate their exhibits. The court will proceed to address the relevancy arguments.

Defendants move to exclude Ex. 1, the purchase agreement dated August 2, 2007.  With the exception of the earnest money check, which plaintiffs have indicated they will not be using, Exhibit 1 is relevant because it establishes the agreed price for the property and the date of the agreement, which are relevant to the calculation of damages.

Defendants move to exclude Ex. 2, the notice of termination of the contract dated August 10, 2007.  This document is relevant to establish the date of the breach, which is also relevant to the calculation of damages.

Exhibit 3 is a proposed mutual release which was never signed by the plaintiffs.  It is in essence a proposed offer of settlement, and it is not relevant to the issue of damages.

Exhibit 4 is a letter from plaintiffs' counsel to defendants informing them of plaintiffs' intent to file a legal action to recover any available damages for breach of contract if defendants did not go through with the scheduled closing on August 15, 2007. The letter is not relevant to the issue of damages.

Exhibit 5 consists of correspondence regarding the earnest money check.  Plaintiffs have indicated that they do not intend to present evidence regarding the earnest money check, and this exhibit is not relevant to the issue of damages.

Exhibit 6 consists of documents relating to another set of offers and counteroffers for the purchase of plaintiffs' home which occurred in September of 2007.  Exhibits 7 and 8 are documents relating to the purchase negotiations and sale of the property in

December of 2007 and January of 2008.  Since, depending on the testimony at trial, these documents may be relevant to the issue of the fair market value of the property at the time of the breach, they will be admitted if properly authenticated.

Exhibits 9 and 10 are defendants' responses to plaintiffs' requests for admissions and interrogatories.  These documents do not in themselves constitute evidence and will not be admitted.

Exhibits 11 through 15 and Exhibit 19 relate to expenses for home maintenance, mortgage payments, travel and moving expenses, and lost wages which, as noted above, are not recoverable.  Thus, these documents are not relevant to the issue of damages.

Exhibits 16 and 17 are the two listing contracts.  These documents would only be relevant if plaintiffs established that they also paid a commission on the defaulted sale or paid a higher rate on the final sale than the 5% indicated in the contract. Therefore, they will be excluded unless plaintiffs come forward with such evidence.

Exhibit 18 is the amended complaint.  This document does not constitute evidence and will not be admitted as an exhibit.

Therefore, the court holds as a preliminary matter, unless convinced otherwise at trial, that Exhibits 1, 2, 6, 7, and 8 are relevant to the issue of damages in this case.  Exhibits 3-5 and 9-19 do not appear to be relevant, and, unless the court is persuaded otherwise at trial, they will not be admitted.

In summary, defendants' motion (Doc. No. 53) is granted in part and denied in part; defendants' motion (Doc. No. 54) is denied without prejudice; defendants' motions (Doc. No. 55) is granted in part and denied in part; defendant's motion (Doc. No. 56) is moot; and plaintiffs' motion to strike (Doc. No. 57) is denied.

It is so ordered.


Date: August 2, 2010                    _____s/James L. Graham_____
                                        James L. Graham
                                        United States District Judge